ALPO PETFOODS, INC., Appellee,

v.

RALSTON PURINA COMPANY, Appellant.

No. 91–7209.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 8, 1993.

Decided July 16, 1993.

Michael L. Denger, with whom Larry L. Simms, Steuart H. Thomsen, Francis M. Gregory, Jr., and Emily J. Krudys, Washington, DC, were on the brief for appellant.

Richard J. Leighton, with whom Richard F. Mann, and Douglas J. Behr, Washington, DC, were on the brief for appellee.

Before BUCKLEY, D.H. GINSBURG, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

This case involves a dispute over the damages recoverable in an action for false advertising brought under the Lanham Act, 15

U.S.C. § 1125(a). ALPO Petfoods sued Ralston Purina and Ralston counter-claimed, each seeking damages for and injunctive relief against false advertising of the other's puppy food product. The district court found that both parties had advertised false claims in violation of the Lanham Act and enjoined both manufacturers from making similar claims in the future. *See ALPO Petfoods, Inc. v. Ralston Purina Co.,* 720 F.Supp. 194 (D.D.C.1989) (*ALPO I* ). The court awarded ALPO $10.4 million in damages but declined to award any damages to Ralston because its violations of the Lanham Act were so much more serious than ALPO's.

Ralston appealed that decision, which we affirmed with respect to liability but reversed and remanded with respect to the damage award. *See ALPO II,* 913 F.2d 958 (D.C.Cir. 1990). On remand, the district court heard testimony from an expert witness for each side and awarded ALPO $12,140,356 and Ralston $53,434 plus its attorneys' fees. *See ALPO III,* 778 F.Supp. 555 (D.D.C.1991). Ralston now appeals that judgment. We affirm in part, reverse in part, and again remand the case for the district court to redetermine certain elements of ALPO's recovery.

## I. Background

Ralston Purina's Puppy Chow is the longstanding leader in the puppy food market. ALPO entered that market in January 1985 when it introduced ALPO Puppy Food into selected states in the Northeast. The next year ALPO sued Ralston under the Lanham Act, challenging the truth of Ralston's advertised claim that Purina Puppy Chow could reduce the severity of canine hip dysplasia (CHD), a debilitating ailment in dogs. Ralston counterclaimed, challenging the truth of ALPO's advertised claims that veterinarians (1) prefer ALPO Puppy Food's formula over that of "the leading brand" (*i.e.,* Ralston) and (2) do so by a 2–to–1 margin.

Following a bench trial, the district court concluded that both Ralston and ALPO made false or misleading advertising claims in violation of the Lanham Act. The court awarded ALPO Ralston's profits, which it estimated at twice the amount that Ralston had spent on the CHD campaign, and awarded each side its attorneys' fees.

On appeal, this court held that it was not appropriate to award Ralston's profits to ALPO because, contrary to the district court's implicit finding, ALPO had not proven that Ralston had acted willfully or in bad faith. We remanded for the district court to award ALPO its actual damages and, if it were to enhance the award above that amount, to explain why the enhanced award is compensatory and not punitive.

On remand the district court refused to award either party the profits it claimed to have lost on sales diverted to the other, on the ground that any such award would be unduly speculative. The court then awarded ALPO damages in the amount of $12 million, comprised of (1) the cost it incurred for advertising responsive to Ralston's false claims, (2) the delay Ralston caused ALPO in achieving national distribution of ALPO Puppy Food (which it never did achieve), and (3) a 50% enhancement of the award intended roughly to compensate ALPO for profits lost on sales diverted to Ralston, the permanent distortion of the puppy food market caused by Ralston's false advertising, interest, and inflation. The court awarded Ralston (1) $53,434 for the cost of its advertising responsive to ALPO's false claims and (2) its attorneys' fees.

## II. Analysis

Ralston now challenges the amount that the district court awarded to ALPO for the cost of responsive advertising, the entire award for the delay of ALPO's income stream from a national product rollout, and the 50% enhancement of those sums. Ralston also contests the court's refusal to award it any lost profits.

### A. Responsive Advertising

■ The district court awarded ALPO approximately $3.6 million for the cost of its responsive advertising. *First,* Ralston argues that this award is improper because the advertisements for which ALPO was compensated were not specifically responsive to Ralston's false CHD claim. In fact, ALPO's

campaign did not even mention Purina Puppy Chow by name.

■ Under the Lanham Act a party injured by false advertising may recover the cost of its own advertisements that "actually and reasonably respond[ed] to the defendant's offending ads." *ALPO II*, 913 F.2d at 969. Recovery is not limited, however, to advertisements that specifically address the false statements made by the defendant. If it were, then the price of recovery would be to give additional currency to the false claims. Where that did not completely defeat the purpose of the Act it would at least make the law a mighty poor remedy. (In the marketplace, it seems, the only thing worse than being talked about, as Oscar Wilde said of the salon, is not being talked about.) In this particular case, moreover, ALPO may not have been able to address the CHD claim at the outset of its responsive campaign, for it had no way of knowing as an initial matter that Ralston's claim was false.

To be sure, directly responsive advertising may be necessary in order to undo the harm where two products have become confused in the public mind as a result of a Lanham Act violation. *See Cuisinarts, Inc. v. Robot–Coupe Intern. Corp.*, 580 F.Supp. 634 (S.D.N.Y.1984) (directly responsive advertising appropriate and compensable where defendant misappropriated trademark owner's name); *see also Best, Monetary Damages for False Advertising*, 49 U.Pitt.L.Rev. 1, 13 (1987) (trademark precedents not generally applicable to false advertising cases). Here, however, the claim is not that two products have become confused in the minds of consumers but rather that Ralston has falsely portrayed its Purina Puppy Chow as a superior product. In this circumstance, the purpose of the Lanham Act requires that ALPO be able to recover for the cost of the advertising campaign it initiated in response to the false CHD claim regardless of whether its advertising undertook expressly to rebut that claim.

■ *Second*, Ralston challenges the award for ALPO's responsive advertising on the ground that the evidence does not support the district court's finding that ALPO increased its spending on advertisements in response to Ralston's CHD campaign. According to Ralston, its false CHD campaign was only one of many factors that led ALPO to increase its advertising budget. While ALPO's witnesses could not state that the CHD campaign was the sole cause of its increased spending on advertising, they did clearly indicate that the increased spending was prompted in part by Ralston's CHD claims.

We think it hardly meet that the party injured by a false advertising campaign be required to prove that the false advertisements were the sole reason for its responsive campaign. It is enough to show that, at the margin, the victim would not have undertaken the campaign but for the false ads. The inframarginal considerations taking it to the brink of that decision are as irrelevant to liability as are the reasons for which a man may have approached the cliff that a villain then pushed him off.

■ *Third*, Ralston attacks the district court's way of calculating the cost that ALPO incurred for responsive advertising. The court used ALPO's planned advertising budget for FY '86 as a baseline and assumed that ALPO's expenditures for FYs '86 and '87 would have been the same but for Purina's CHD campaign. The district court then subtracted what ALPO had planned to spend from what it actually spent for the two years, and treated the remainder as the cost of responding to Ralston's CHD campaign.

Ralston claims that for all its apparent precision the district court's approach is at bottom speculative. On the contrary, it seems to us that by using figures that ALPO had prepared in the ordinary course of business, the district court was able to start with an unusually solid foundation upon which to build its calculations. *See American Medical Imaging v. St. Paul Fire & Marine*, 949 F.2d 690, 694 (3rd Cir.1991) ("[P]rojections ... formulated in the regular course of business prior to the alleged loss may commend them to the trier of fact as more reliable than if they had been prepared after the fact for purposes of litigation").

■ *Fourth*, Ralston argues that the award for ALPO's responsive advertising should be disallowed to the extent that it exceeds the amount that ALPO asked for on that account in the parties' joint pretrial statement. We see no prejudice in that to Ralston, though, inasmuch as ALPO claimed as damage of all sorts more than it was ultimately awarded. That put Ralston on notice of the extent of its potential liability, so there is no risk that Ralston may have under-defended this case. Ralston does not make any representation to the contrary, and for what it is worth we can hardly imagine a more vigorous defense than Ralston put on.

■ *Fifth*, Ralston claims that the award should not stand because the amount ALPO spent on responsive advertisements was disproportionate to the amount Ralston spent on the CHD claims to which ALPO was responding. Ralston spent $2.2 million advertising its CHD claim in ALPO's marketing area; ALPO was awarded $3.6 million for responsive advertising. In view of the significance of Ralston's claims, however, it does not seem unreasonable for ALPO to have spent $3.6 million in order to rebut $2.2 million worth of false advertising; a consumer who heard the CHD claim would almost certainly conclude that Purina Puppy Chow was by far the superior product. Indeed, because Ralston's false claim was so bold and so specific, in comparison with which ALPO's reply was rather tepid and general, it stands to reason that ALPO's campaign may have been less persuasive dollar for dollar. In any event, ALPO's outspending Ralston by a ratio of little more than 1.5 to 1 is not so clearly disproportionate as to require any disallowance.

*Sixth*, The district court did not in fact award ALPO the full difference between its planned and its actual advertising expenditures, which came to $5.2 million. The court disallowed as unreasonable $1.6 million that ALPO had spent for a coupon campaign because "ALPO intentionally printed the false preference claim on a large number of its coupons." *I.e.*, some of ALPO's responsive advertising was itself false and in violation of the Lanham Act.

Ralston alleges that the $3.6 million awarded still compensates ALPO for some expenditures it made in order to advertise its false claims. Unfortunately, the district court did not address this claim other than as noted above, and we cannot resolve it on the present record. The district court found, in resolving Ralston's counterclaim, that ALPO did violate the Lanham Act. Over the relevant time period ALPO spent well in excess of $3.6 million on advertising, but ALPO may not have spent more than $3.6 million on non-false advertising. We cannot merely assume that the non-false advertisements run in FYs '86 and '87 were responsive to the CHD campaign (hence incremental and recoverable) while the false advertisements for which ALPO may not recover were part of the "baseline" expenditure (hence would have aired anyway and not recoverable). We must therefore remand this matter for the district court to determine in the first instance the percentage of ALPO's advertising expenses during the relevant period that were for false or misleading advertisements, and to reduce the $3.6 million award pro rata.

## B. Delay of ALPO's Income Stream

■ Although the district court declined to speculate about the profits that either party lost on sales diverted to the other, the court did award ALPO the profits it lost due to the need, in view of Ralston's CHD campaign, to defer its national expansion. The court calculated ALPO's losses from the profits that ALPO had projected it would earn when it first decided to enter the national puppy food market. Early year losses and later year profits (projected into the indefinite future) were reduced to present value; the court then computed the present value of that same income stream assuming a five year delay in getting it started and awarded ALPO the difference, some $4.5 million.

Ralston argues that the delay in ALPO's receipt of income from a national rollout of ALPO Puppy Food is not a permissible category of damages, and is purely speculative. We disagree on both counts.

When we remanded this case earlier for the district court to recompute the damage award we noted that:

[A]ctual damages under section 35(a) can include: profits lost by the plaintiff on sales actually diverted to the false advertiser, profits lost by the plaintiff on sales made at prices reduced as a demonstrated result of the false advertising, the costs of any completed advertising that actually and reasonably responds to the defendant's offending ads, and quantifiable harm to the plaintiff's good will, to the extent that completed corrective advertising has not repaired that harm.

*ALPO II*, 913 F.2d at 969. While we did not specifically itemize a delay in the receipt of a stream of income as a compensable category of damages, the district court correctly understood that our list of such categories was illustrative, not exhaustive. The statute itself suggests as much, for it specifically authorizes the court, if it finds that a recovery based upon profits would be inadequate, "in its discretion [to] enter judgment for such sum as the court should find to be just," and to award the plaintiff what is in effect the time value of its deferred profits is hardly an abuse of discretion.

Nor do we view the award as unduly uncertain. The district court found that ALPO would have expanded nationally but was stymied by Ralston's false advertisements. The court therefore looked at ALPO's projections, prepared in the ordinary course of business and on the basis of which it was prepared to risk its own capital, in order to estimate the profits that ALPO would have reaped from that expansion. ALPO was not certain to succeed, of course, but the question is who is to bear the now-hypothetical risk that it would fail? We answered that question when we remanded this case to the district court:

When assessing actual damages, the court may take into account the difficulty of proving an exact amount of damages from false advertising, as well as the maxim that "the wrongdoer shall bear the risk of uncertainty which his own wrong has created."

913 F.2d at 969 (quoting *Otis Clapp & Son v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir.1985), in turn quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946)). That is what the district court has done—to Ralston's chagrin.

■ The district court erred, however, in refusing to reduce the award to reflect ALPO's alternative use of the funds it did not have to expend on a national rollout. In order to reflect economic reality, damages awarded in order to compensate for loss of a business opportunity should equal the plaintiff's " 'opportunity cost,' or the return it could have made on an alternative investment" of the funds not spent on the foregone opportunity. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 555 (7th Cir.1986). *See Hanover Shoe v. United Shoe Machine*, 392 U.S. 481, 503–04, 88 S.Ct. 2224, 2236–37, 20 L.Ed.2d 1231 (1968).

ALPO retained the use of the funds it would have spent on a national rollout; presumably it did not put the money under a mattress but obtained some (albeit a second best) return on that capital. That ALPO may in fact have spent some or all of the money on a responsive advertising campaign, as the district court found, is beside the point. The responsive campaign itself constituted, in effect, an alternative investment, the return on which is the prejudgment interest to which ALPO is entitled. *See generally Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir.1992) (award of prejudgment interest under Lanham Act); 26 U.S.C. § 6621 (provision for calculating interest award).

To award ALPO prejudgment interest without reducing the award made in compensation for the loss of the future income stream would be double counting. The district court should therefore reduce the award for deferral of ALPO's future income stream in order to reflect the return on capital it presumably received from alternative investments, using the prejudgment interest rate as a measure of that return.

## C. Lost Profits

Ralston claims that it is entitled to recover its lost profits from ALPO. At trial, each side relied upon a regression analysis done by one of ALPO's experts in order to show the impact that the other side's advertising had on its sales. In *ALPO I* the district court inferred from this regression analysis that Ralston's advertising had a material effect upon ALPO's sales, thus warranting an award of damages under the Lanham Act. 720 F.Supp. at 209, aff'd 913 F.2d at 965. Ralston now argues that the district court abused its discretion when it declined to use the same data to calculate the profits that Ralston lost due to ALPO's diversion of sales by falsehoods.

We think the court reasonably found it could rely upon the regression to show the direction but not the magnitude of the effect that ALPO's advertisements had upon Ralston's profits. Ralston, however, presented no evidence with which the court could fill in the resulting gap. Therefore we affirm the court's refusal to award Ralston damages for profits lost on sales diverted to ALPO.

## D. Enhancement

█ Section 35(a) of the Lanham Act authorizes the court to award up to three times a plaintiff's actual and proven damages so long as the result is compensatory, not punitive. The district court enhanced the award to ALPO by 50% in order to cover its lost profits (*i.e.*, on sales diverted from ALPO to Ralston), compensate ALPO for a permanent distortion in the market for puppy food, and for interest and inflation. Ralston says the enhancement is speculative, punitive, and an indirect attempt to award attorneys' fees to ALPO notwithstanding our earlier reversal of such an award.

The last allegation is as unworthy of counsel as it is unnecessary to Ralston's cause. An enhancement is appropriate to compensate a Lanham Act plaintiff only for such adverse effects as can neither be dismissed as speculative nor precisely calculated. Interest and inflation are not such elusive quanta. Lost profits and market distortion are, however, appropriate bases for the catch-all enhancement contemplated by § 35(a). We thus remand this aspect of the award to the district court to compute the precise amounts to be awarded for interest and the effect of inflation, and to reconsider such enhancement as may be appropriate solely in order to compensate ALPO for its lost profits on sales diverted to Ralston and the continuing distortion of the market owing to Ralston's false advertising.

## III. Conclusion

We affirm the district court insofar as it awarded ALPO damages for a delay in income stream caused by Ralston's false advertising and refused to award Ralston lost profits on sales diverted by ALPO. We remand this matter for the court to reduce the award to ALPO for the cost of responsive advertising and to determine the amounts to be awarded for interest and inflation and reduce the enhancement in light thereof.

*So ordered.*