61 F.3d 904
 37 U.S.P.Q.2d 1151
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WYNN OIL COMPANY, Plaintiff-Appellee,
v.
AMERICAN WAY SERVICE CORPORATION; Thomas A. Warmus,
Defendants-Appellants.
 No. 94-1294.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1995.
 
 Before: LIVELY, NELSON, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants American Way Service Corporation ("AWSC") and Thomas A. Warmus challenge the district court's decision awarding Plaintiff Wynn Oil Corporation in consideration of its successful trademark infringement and unfair competition action against defendants $2,023,645 in profits and $1,024,613 in prejudgment interest and reinstating its prior attorney's fee award of $47,303.47. For the reasons stated herein, we affirm in part and reverse in part.
 
 I.
 
 2
 This is the second time this court has considered this trademark infringement and unfair competition case. A recitation of the facts prior to remand can be found in Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 597-99 (6th Cir.1991). That decision affirmed the district court's grant of judgment to Wynn on its trademark infringement, 15 U.S.C. Sec. 1114, unfair competition, 15 U.S.C. Sec. 1125(a), and Michigan common law infringement claims. This court reversed and remanded, however, that portion of the district court's opinion that denied plaintiff's request for a lost profits award due to a lack of evidence on that issue and awarding $47,303.47 in attorneys fees and costs in lieu of profits.
 
 
 3
 Upon remand, the district court held a bench trial on the damages issue. It heard evidence from defendants on their alleged net profit, but found defendants' calculations of $7 million in costs and $750,000 in losses to be incredible and without foundation. The district court instead adopted Wynn's calculation of actual profits, resulting in an award of $2,023,645, representing actual profits and potential investment income. The court then awarded $1,024,613 in prejudgment interest on the total amount of profits and reinstated the $47,303.47 attorneys fees award.[1] Defendants now challenge these awards.
 
 II.
 
 4
 A) Exclusion of Exhibit 3 from Evidence.
 
 
 5
 Defendants proffered exhibit 3, a summary of AWSC's records on service contracts dated 1985 through 1989, pursuant to Fed.R.Evid. 1006, which provides:
 
 
 6
 The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
 
 
 7
 The district court excluded the exhibit, noting as its bases defendants' failure to provide the originals or duplicates to Wynn in time to review prior to trial and the misleading nature to the summary. Defendants challenge this ruling, contending that they made the originals available to Wynn as early as June 2, 1992, the date of their response to Wynn's interrogatory.
 
 
 8
 As the admission of summaries under Fed.R.Evid. 1006 is committed to the " 'sound discretion of the trial court,' " Martin v. Funtime, Inc., 963 F.2d 110, 115 (6th Cir.1992) (citations omitted), we review a district court's exclusion of such for an abuse of discretion. " 'In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence. However, even if a mistake has been made, a new trial will not be granted unless the evidence would have caused a different outcome at trial." Nida v. Plant Protection Ass'n Nat'l, 7 F.3d 522, 527 (6th Cir.1993) (citations omitted).
 
 
 9
 While we find that the district court did indeed abuse its discretion in excluding exhibit 3 from evidence, we find that the error was harmless. The essential elements of exhibit 3 were admitted into evidence pursuant to other exhibits, including exhibit 24. See, e.g., Leonard v. UniRoyal, Inc., 765 F.2d 560, 567 (6th Cir.1985) (error in failing to admit evidence is harmless " 'if other substantially equivalent evidence of the same facts has otherwise been admitted into evidence.' " (citations omitted)). Further, we find it significant that the district court, as trier of both fact and law, deemed exhibit 3 to be misleading and not probative. We may assume then, that exhibit 3, even if admitted, would not have made a difference in the outcome of the trial. Nida, 7 F.3d at 527.[2]
 
 
 10
 B) Defense Exhibits 70, 85 and 45.
 
 
 11
 Defendants contend that the district court erred in not allowing David Howard, the controller and custodian of AWSC's records, to testify to exhibits 70 (samples of 1989 contracts), 85 (service contracts and related documents) and 45 (summary of funds adjustments). As Wynn correctly notes, however, exhibits 70 and 85 were eventually admitted into evidence.
 
 
 12
 As to exhibit 45, defendants contend that the document should have been admitted either as a business record or as a Rule 1006 summary. Neither argument is valid, however, as defendants prepared the exhibit explicitly for purposes of trial in contravention of the business records rule, and defendants failed to provide the plaintiffs the originals or copies thereof before or during trial in contravention of Rule 1006.
 
 
 13
 C) Calculation of Net Profits for Infringing Sales.
 
 
 14
 Defendants claim that the district court's opinion indicates that it did not understand that it had the discretion to permit a calculation of net profits based on single five-year period rather than separate years. Defendants, however, are the parties that misunderstand. The district court did not indicate that it did not believe it could use a five-year period. Rather, it simply indicated that it would not use such a period as this would allow defendants to unjustly reduce Wynn's damage award. This was not error.
 
 
 15
 Defendants next contend that the district court erred in finding defendants' calculation of overhead costs to be incredible. Given Warmus's prior testimony and the fact that the district court was to "resolve uncertainty in Wynn's favor," Wynn Oil Co., 943 F.2d at 607, we find that the district court's decision to adopt plaintiff's calculations was appropriate.
 
 
 16
 D) Alleged Judicial Bias.
 
 
 17
 Defendants contend that Judge Taylor was predisposed to Wynn's side prior to the trial on damages and thereby failed to accord defendants a right to be heard. Although they never sought Judge Taylor's recusal, defendants now contend that Judge Taylor's conduct was so prejudicial as to require a new trial on damages.
 
 
 18
 The case of Liteky v. United States, 114 S.Ct. 1147 (1994), provides guidance on this issue:
 
 
 19
 First, judicial rulings alone almost never constitute valid basis for a bias or partiality motion.... In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extra-judicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved.... Thus, judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible....
 
 
 20
 Id. at 1157 (citations omitted). Significant for this case, the Court went on to emphasize:
 
 
 21
 Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger.... A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.
 
 
 22
 Id.
 
 
 23
 While defendants cite a number of examples of supposed bias on the part of Judge Taylor, none indicates bias sufficient to require reversal. Rather, most stem from Judge Taylor's justified dissatisfaction and frustration with defense counsel and/or the defendants. While a trial judge's justified frustration with a party may not be commendable, it is not grounds for reversal. See id. at 1155. Further, given that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," Judge Taylor's evidentiary rulings do not compel a finding of bias. Id. at 1157. We find, therefore, that defendants' claim of denial of opportunity to be heard is without merit.
 
 
 24
 E) Profits and Prejudgment Interest Award.
 
 
 25
 "Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases." American Honda Motor Co. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir.1990) (citations omitted); see also ALPO Petfoods v. Ralston Purina Co., 997 F.2d 949, 954 (D.C.Cir.1993); Gorenstein Enter. Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir.1989). Whether this is such an "exceptional case" is not the determinative issue of this appeal. Rather, the issue is whether the district court committed "double counting" when it awarded profits, calculated by (1) revenues minus costs and (2) potential investment income, plus prejudgment interest on the total amount of profits. Upon review, we hold that the district court erred in awarding potential investment income (i.e., investment income not actually earned by the defendant) and in engaging in double counting.
 
 
 26
 A court may compensate a successful plaintiff for "plaintiff's 'opportunity cost, or the return it could have made on an alternative investment' of the funds spent on the foregone opportunity." ALPO Petfoods, 997 F.2d at 954. This may be done by awarding a plaintiff either the defendant's actual investment income or an amount of prejudgment interest. A court may not, however, award both as this would be double counting. See id. ("To award [plaintiff] prejudgment interest without reducing the award made in compensation for the loss of future income stream would be double counting."); Gorenstein Enter. Inc., 874 F.2d at 439 (Ripple, J., concurring) (award of prejudgment interest inappropriate where jury awards a verdict that "already compensates the plaintiff for the lost time value of money....").
 
 
 27
 In light of the above rule, the district court twice erred in making its award. First, it erred in awarding plaintiff potential rather than actual investment income. Second, it erred in awarding investment income and prejudgment interest on the total. Upon remand, the district court should award either actual investment income or prejudgment interest on the lost profits amount, not both.[3]
 
 
 28
 F) Attorney's Fee Calculation.
 
 
 29
 Defendants do not challenge the district court's conclusion that this is an "exceptional case" justifying some award of attorneys fees. Instead, defendants challenge specific amounts included within the calculation, which we review pursuant to Sec. 1117(a) under the abuse of discretion standard. Wynn Oil Co., 943 F.2d at 607. Upon review, we find that the district court did not abuse its discretion in including the expenses at issue and affirm the attorneys fee award.
 
 
 30
 REVERSED and REMANDED for a recalculation of interest.
 
 
 
 [1]
 The district court also indicated that it would award additional attorneys fees for the damages trial. The exact figures of this additional amount are not certain, although defendants indicated that the court awarded over $100,000 in attorneys fees
 
 
 [2]
 Defendants also argue that the district court erred when it prevented defense witnesses from testifying to the contents of exhibit 3. Given that any error associated with not admitting exhibit 3 was harmless, however, this claim also fails
 
 
 [3]
 Defendants also argued that the district court erred in applying the prime rate to the prejudgment interest calculation. We disagree. The prime rate "is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default...." Gorenstein Enter., Inc., 874 F.2d at 436. Thus, if the district court upon remand chooses to award prejudgment interest, it may use the prime rate