**PIZZA HUT, INC.,**

v.

**PAPA JOHN'S INTERNATIONAL, INC., et al.**

No. Civ.A. 3:98CV01902.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 3, 2000.

---

## MEMORANDUM OPINION AND ORDER

SANDERSON, United States Magistrate Judge.

Pursuant to the consents of the parties and the District Court's order of transfer filed on October 22, 1998, in accordance with the provisions of 28 U.S.C. § 636(c), on October 25, 1999, this action came on for trial on the liability phase. Concurrently with the jury trial, the court received evidence with respect to injunctive relief sought by the parties. Upon the return of the jury's verdict and having waived the jury's determination of damages, the parties presented the damages issues to the court.

Based upon the jury's verdict and the evidence presented in support of injunctive relief and the parties' evidence on damages, the court addresses the matters in controversy with respect to advertising, Papa John's motion for judgment as a matter of law, the parties' claims for damages, and the issue of attorney's fees, and accordingly finds and orders as follows:

### 1. Tomato Sauce Advertisements

Tomato sauce is a key component in the parties' pizza products. The evidence established that Pizza Hut and Papa John's International, Inc., and Papa John's U.S.A., Inc. (hereinafter referred to as "Papa John's") use different processing methods in obtaining the tomato sauce for their pizzas, but both methods begin with fresh, vine-ripened tomatoes.

Since its inception Papa John's has purchased its tomato sauce from a single supplier, Stanislaus Products, Inc. ("Stanislaus"). Stanislaus uses a process alternately described as the "fresh pack" or the "annual pack" method. Stanislaus purchases fresh tomatoes from California tomato growers. Once the harvested tomatoes are delivered to Stanislaus's plant, the tomatoes are processed, cooked and canned after oil and spices have been added. Papa John's labels are affixed to the cans which are then shipped to Papa John's regional facilities, from which they are subsequently delivered to Papa John's pizza outlets. At the stores the contents of the cans are placed directly on the pizzas prior to cooking with only minimal additional preparations.

The tomato sauce used by Pizza Hut goes through multi-step processing from the time that the fresh tomatoes go through the initial processing until the time that the sauce is delivered to Pizza Hut pizza outlets. In the initial step, the tomatoes are reduced to a tomato paste which results in what has been described as remanufactured tomato paste or "sauce on demand." As compared to the processing which occurs at the Stanislaus plant, the initial phase produces a tomato paste which is more viscous with a much lower water content. The tomato paste is then stored in bulk form until it is needed for

the next step in the manufacturing process.

Pizza Hut has contracts with third-party vendors, e.g. Hunt–Wesson, Inc., which prepare a tomato sauce concentrate in accordance with Pizza Hut's specifications. In this step, water is added to the tomato paste along with oil and spices to create Pizza Hut's tomato sauce concentrate which is packed and then shipped to Pizza Hut warehouses for ultimate delivery to Pizza Hut's pizza outlets. Additional water is added to the pizza sauce concentrate at each pizza outlet before it is placed on a pizza prior to cooking.

At the time they are placed on uncooked pizzas, the consistency and water content of the tomato sauces used by the parties in their pizza products are essentially identical. Although different processing methods are used by each from the time the fresh tomatoes are cooked until the tomato sauce is applied to a pizza, there is no discernable measurable difference between the tomato sauces used by Papa John's and Pizza Hut.[1]

In the summer of 1997 Papa John's and its franchisees began running and distributing television and print advertising which depicted Papa John's pizza sauce in a kettle juxtaposed with pictures of congealed tomato paste in another frame. With respect to television commercials, the announcer's voice-over stated on some occasions that it was "what most big chains use."[2] See, e.g., Plaintiffs Exh. 1–A–5[3]; see also Plaintiff's Exh. 1–A–16 (showing a picture of a can labeled "PIZZA PASTE"); Plaintiff's Exh. 1–A–25 (showing a glob of tomato paste in a clear bowl under a faucet). With respect to print advertising similar comparative pictorial depictions and written descriptions appear. See, e.g., Plaintiff's Exhs. 2–B–105, 2–B–153, and 2–B–193. In its most recent television advertisement, see Plaintiff's Exh. 1–A–29, Papa John's depicts a sculpture made from tomato paste with a voice-over which states: "It's [what] some big pizza chains add water to to make their sauce."[4]

In addition, Papa John's advertising on other occasions specifically mentioned Pizza Hut by name in its sauce comparisons. See, e.g., Plaintiff's Exhs. 1–A–11, 1–A–15, and 2–B–73. In its answers to Special Issue Nos. 5 and 6, the jury found that Papa John's sauce claims were false or misleading and that such claims deceived or were

---

1. During the discovery phase of this case, numerous motions for protective order were filed in this court and in other federal districts by third-party vendors in response to Rule 45 subpoenas *duces tecum* served by the parties. *See, e.g.,* Stanislaus Food Products, Inc.'s Motion for Protective Order filed in this court and on which the court granted partial relief on July 14, 1999.

The thrust of the third-parties' motions was that the extensive discovery which the parties sought would require disclosure of confidential and proprietary information with respect to the their processing and production methods.

After reviewing extensive pleadings filed relative to Stanislaus's motion, and conducting two separate hearings on the motion, this court concluded that Stanislaus's interests in nondisclosure of its methods outweighed the interests of the parties in obtaining the detailed information sought. It is the court's understanding that the rationale for the protection granted was followed by other federal courts which considered similar motions for protective order.

The court's order of July 14, 1999, provided that if Papa John's could produce probative scientifically recognized data which showed differences between the tomato sauces used by Papa John's and by Pizza Hut, the issue of discoverability might be reconsidered. Neither subsequent to the July 14, 1999 order, nor prior to the close of the liability phase of the trial was any credible evidence presented to demonstrate the existence of demonstrable differences.

2. It is undisputed that Pizza Hut is currently the largest pizza chain in the United States.

3. Although tapes of the television commercials were themselves admitted into evidence, the exhibit numbers for the commercials are those assigned to the "story boards" which were also admitted into evidence.

4. Plaintiff's Exh. 1–A–29 was first aired after the discovery deadline and was admitted solely as evidence relating to Papa John's continuing advertising campaign.

likely to deceive ordinarily prudent consumers to whom the advertising was addressed or disseminated.

■ In a case where legal claims are tried to a jury and equitable claims are presented to the court, and the claims are "based on the same facts," "the Seventh Amendment requires the court to follow the jury's implicit or explicit factual determinations" in deciding the equitable claims. *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 507 (9th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990); *see also, Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1293–94 (7th Cir.1987). Of course, this rule of law would not apply when a party is entitled to post-verdict relief under Rule 50(b)(1)(C), discussed under Part 6, *infra*, at p. 612.

■ Even if the court were not bound by the jury's findings, based upon the its independent consideration of the evidence presented in the liability phase of the trial, the court fully concurs in the findings of the jury with respect to Papa John's sauce advertising.

Without any scientific support or properly conducted taste preference test, by the written and/or oral negative connotations conveyed that pizza made from tomato paste concentrate is inferior to the "fresh pack" method used by Papa John's, its sauce advertisements convey an impression which is misleading and which is likely to mislead a substantial number of ordinarily prudent consumers into believing that Papa John's tomato sauce is superior to that of Pizza Hut's and of other major pizza chains. Papa John's sauce commercials are also false to the extent that they portray congealed tomato paste—in a can or free-standing—as the ultimate ingredient of other pizza chains' tomato sauce. *See, e.g.*, Plaintiff's Exhs. 2–B–193 and 2–B–153.

■ The Lanham Act does not prohibit a seller from fairly and truthfully expounding upon the characteristics and properties of its own products in its promotional advertising. However, when a seller chooses to engage in advertising which compares its products to products of its competitors, it is unlawful to make false comparisons and to engage in advertising which misleads ordinarily prudent consumers into believing unfounded claims of superiority. Because Papa John's sauce claims violate the Lanham Act in these respects, Pizza Hut is entitled to injunctive relief set out more specifically in the court's judgment filed this day.

### 2. *Dough Advertisements*

■ Another major component of the parties' pizza products is the dough which is used to make the pizza crusts. The evidence at trial established four methods of preparation of the dough and crusts used by the parties in making pizza.

The predominate method used by Papa John's in preparing its pizza dough is the cold or slow-fermentation method. Papa John's dough is prepared at regional commissaries. Flour and yeast are mixed with filtered water to form the dough which is then cut into balls of various sizes, each of which is sufficient to make an individual pizza crust. Following initial proofing[5], the dough is refrigerated, thus retarding the proofing process effected by the yeast. The dough is then transported to Papa John's pizza outlets. The retarding of the yeast's activity slows the proofing process such that the dough is not ready to be used in a pizza until approximately the third day after the dough is prepared at a commissary. Although there is an optimal point when the dough is at its best for use in a pizza crust (see testimony of Dr. John Faubion and Plaintiff's Exh. 383), there is a four day "window" during which the dough may be used to produce an acceptable crust. *Id.* Dough used prior to the "window" is not sufficiently proofed, while dough which is more than approximately 6½ days old is "over-proofed" and is thrown away.

---

**5.** Proofing is the term used to describe the rising of dough caused by the yeast's action.

A second method, used by Pizza Hut to make pizza crusts, is the frozen dough method. The largest number of pizzas sold under the Pizza Hut trademark are made from frozen crusts. *See e.g.,* Defendant's Exhs. 93, 2452, 2453, 2454, 2455, and 2459; and testimony of Dr. R. Carl Hoseney. This method involves a manufacturing process in which the dough is formed into pizza crusts, which are proofed, and then quick frozen. The crusts remain in this frozen state until they are thawed for use in a pizza. The freezing renders the yeast inert and therefore no additional "proofing" of the dough occurs.

A smaller number of pizza crusts are "par-baked." During the manufacturing process, the dough is formed into crusts, which are then proofed and partially baked before shipping to the pizza chain outlets. Essentially all that remains to be done is to brown the crusts in the course of preparing individual pizzas.[6]

The final method used by Pizza Hut in preparing crusts for its family-size Pan Pizza and some other pizzas prepared at its pizza outlets is the "pre-mix" method. This method entails a process in which the dry ingredients including yeast are mixed together and packaged by a manufacturer. The dry "pre-mix" is ultimately delivered to each Pizza Hut location where it is mixed with water to produce the dough to make the pizza crusts. Like the cold or slow-fermentation process, the yeast remains alive and is activated once the water is added to the "pre-mix." After the dough is allowed to proof for not less than three hours, it can be used for up to fifteen hours thereafter. Similarly, although the useful life of the dry "pre-mix" is appreciably longer that the cold or slow fermentation process, there is a point at which the yeast die, after which the dry "pre-mix" ingredients can no longer be used.

Although the evidence shows that each method presents some logistical problems there is no evidence that one method is superior to the others in producing a suitable pizza crust when the proper procedures are followed.

The parties also use different wheat stocks to make their dough. In the case of Papa John's, spring wheat is used, while Pizza Hut uses winter wheat in its flour. The spring wheat used by Papa John's has a slightly higher protein content, but the major differences are ones in the texture of the crusts.

Prior to around June 1997 it was standard procedure for Papa John's outlets to use municipal tap water to rinse out tomato sauce cans, the residue from which was added to the tomato sauce prior to spreading it on uncooked pizzas. Around June 1997 Papa John's began using filtered, ozonated water at all commissaries which manufactured the Papa John's slow-fermentation dough. At about the same time, Papa John's began running advertisements which described its dough as being made with "clear filtered water" and further stated that "the biggest chain"[7] used "whatever comes out of the tap" concluding with a picture of John Schnatter, Papa John's founder and CEO, standing beside a Papa John's employee washing a cooking container in a sink, stating that "tap water belongs here. Not in our dough." *See, e.g.,* Plaintiff's Exhs. 1–A–6, 2–B–87, 2–B–106, 2–B–239, and 2–B–285.

When this and similar ads began to run on television and in print advertising, e.g. Plaintiff's Exhs. 2–B–87, 2–B–106, 2–B–239, and 2–B–285, Papa John's received at least a dozen complaints from municipal water departments, including the Louisville Water Company, the city where Papa John's headquarters are located. *See* Plaintiff's Exh. 129 (complaining about the advertising's implication that municipal water supplies were inferior or unsafe).

In addition, Papa John's ads made explicit reference to the fact that its dough was never frozen. *See, e.g.,* Plaintiff's

---

**6.** Par-baking is the process used for brown-and-serve rolls, commonly found in grocery stores.

**7.** *See* note 2, *supra.*

Exhs. 2–B–118, 2–B–126, 2–B–152, 2–B–186, and 2–B–194.

■ In August 1998 Pizza Hut began running "corrective" television commercials in response to Papa John's advertising claims. Two of the commercials made specific reference to the fact that Papa John's pizza dough was trucked in and was up to six days old before it was used, while noting that Pizza Hut's dough was made fresh daily in its stores. *See* Defendant's Exhs. 20 and 1123.

The uncontroverted testimony of Dr. Faubion established that when consumers are asked to state a preference between fresh and frozen dough, fresh dough is preferred, but that when taste test respondents are asked to distinguish between crusts made from fresh dough and those made from frozen dough in blind taste tests [8], there is no statistically significant preference between the two. *See also,* Plaintiff's Exh. 339.

Papa John's emphasis on fresh vs. frozen dough in its commercials plays upon a commonly held-though unsupported-bias in favor of fresh ingredients as opposed to those which have been frozen. Therefore, its claims that its pizza crust is superior to that of Pizza Hut's frozen crusts is misleading to ordinarily prudent consumers. Likewise, Papa John's assertion that its dough made with filtered, ozonated water is better and that dough made with water from approved municipal or water supply districts is inferior or unsafe is both false and misleading.

■ Although corrective advertising may be permissible under appropriate circumstances, this form of self-help does not permit a victim of unfair advertising to respond with advertising which itself violates the Lanham Act. Both of Pizza Hut's "corrective" television ads, *i.e.,* Defendant's Exhs. 20 and 1123, are false and misleading (1) in suggesting that Papa

John's dough prepared by the slow fermentation process results in a dough that is inferior to the dough prepared by Pizza Hut using the pre-mix method; (2) in failing to disclose that the majority of the crusts used to make pizzas sold under the Pizza Hut name are frozen; and (3) in failing to identify specifically the pizzas which are prepared using "pre-mix" dough.

As a matter of fact, the methods used by each party to prepare its pizza dough in accordance with their respective specifications and consistent with their operational manuals, produce doughs which are qualitatively indistinguishable. Essentially both sides have exploited the differences in their dough preparation methods to draw false qualitative comparisons between the methods used, disparaging the pizza products of the other party and thereby misleading the consumers to whom the advertising is directed. Accordingly, to the extent that each side's advertising with reference to dough violates the Lanham Act, injunctive relief will be granted as set out in the Court's judgment.

### 3. *Papa John's Taste Test Advertising*

■ Following the introduction of Pizza Hut's Lightning Bolt pizza in May 1997 which incorporated a new delivery box (Defendant's Exh.2075) (imprinted with the statement "We dare you to find a better pizza"), Papa John's began running television commercials stating that in comparative taste tests, Papa John's pizza was preferred. *See, e.g.,* Plaintiff's Exhibits 1–A–11, 1–A–20, and 1–A–24.

Mr. Schnatter prominently appeared in the Papa John's commercials. The announcer's voice-over stated "that Papa John commissioned an independent taste test" and that "Papa John's won, won big time." [9] Superimposed on the screen during a part of each commercial was a print-

---

**8.** In a blind taste test, a respondent does not know whether a specific crust sample was made from frozen or fresh dough.

**9.** Plaintiff's Exh. 1–A–11 also contains a depiction of Pizza Hut's tomato sauce, made from "remanufactured paste." See Part 1. Tomato Sauce, *supra.*

ed legend identifying the respective pizza products of each which were tested and the fact that regional testing had been conducted, and qualified by the fact that the comparisons were made between the responses of those persons who expressed a preference.

Other evidence in the case demonstrated that in mall surveys, when respondents were specifically directed to view a commercial two times in succession, a substantial number of the respondents failed to observe the "supers" or the contents thereof.

In fact, a minority of the respondents to Papa John's taste tests expressed a preference for Papa John's pizza products. The responses of the majority either fell in a category with no preference or a category which preferred Pizza Hut's tested products. Under such circumstances, the voice-over which proclaimed that Papa John's pizza "won big time," which is highly qualified by the "super" appearing in print, is false or misleading, as found by the jury. *See* Jury's Answer to Special Issue No. 3.

Pizza Hut argues that Papa John's taste tests advertisements are rendered false or misleading by the additional factor that Papa John's taste tests did not seek to compare Papa John's pizza to Pizza Hut's bestselling pizza, the Pan Pizza. The fact is that Papa John's compared its pizza to Pizza Hut's comparable pizza products. As long as the advertising is specific as to which pizzas of each party were included in the taste tests, such is sufficient to adequately inform ordinarily prudent consumers, thereby foreclosing a finding that this aspect of the taste test advertising violates the Lanham Act.

■ When regional taste tests are used as the basis for taste test results in order to avoid misleading consumers as to the relevance of such results, the advertising should disclose the cities or states in which the tests were administered and the month and year in which they were conducted.

■ Papa John's also ran television advertising which prominently featured Frank Carney, a co-founder of Pizza Hut who has owned Papa John's franchises since 1993. *See* Plaintiff's Exhs. 1–A–1 and 1–A–2. His status as a co-founder of Pizza Hut tends to give an added cachet to his personal preference for Papa John's pizza. It is inappropriate to bar Papa John's from the continued use of such commercials. However, to avoid the misleading effect which such commercials would otherwise have, any future use of the "Frank Carney" commercials or subsequently made commercials featuring Mr. Carney and identifying his status as a co-founder of Pizza Hut should include a voice-over or prominent "super" stating that he has had no affiliation with Pizza Hut since 1980.

### 4. *Ingredients*

■ Pizza Hut seeks injunctive relief with respect to Papa John's advertising relating to the ingredients used in Papa John's pizzas. Whether such advertising violated the Lanham Act was presented to the jury in the liability phase of the trial. *See* Court's Instructions to the Jury at p. 8, Special Issue No. 9. On this issue, the jury found that Pizza Hut failed to prove its claim. *See* Jury's Answer to Special Issue No. 9.

Since the evidence presented to the jury and to the court with respect to Pizza Hut's "ingredients" claim was in all respects identical, the jury's determination on this issue forecloses any injunctive relief on this claim.[10]

**10.** In the course of the deliberations, the jury requested, "[w]e would ask that the court clarify the scope of Special Issue No. 9. Specifically, the meaning and scope of the word 'ingredients,' which is italicized in the special issue, as are the words 'sauce' and 'dough' in Special Issues Nos. 5 and 7, respectively, is the question. Is it meant to be exclusive of dough and sauce, or is 'ingredients' meant to be inclusive of *all* ingredients, exclusive of sauce and dough?" (emphasis in original). In response, the court answered, "[i]n answer to your question the term 'ingredients' as used in Special Issue No. 9 is exclusive of the terms 'sauce' and 'dough.' "

5. *"Better Ingredients, Better Pizza," Slogan*

■ In late 1994 Mr. Schnatter contacted Jack Trout for the purpose of assisting Papa John's in developing a new advertising slogan or "tag line." Mr. Trout met with personnel of Papa John's and reviewed Papa John's operations and subsequently recommended a slogan, "The Better the Ingredients, the Better the Pizza." The head of Papa John's marketing department, in turn, shortened the slogan to "Better Ingredients. Better Pizza."

Beginning in May 1995 Papa John's began using the slogan "Better Ingredients. Better Pizza," in its print and its radio and television advertising. Papa John's also placed the slogan on its pizza boxes, condiment containers and signage.

After Papa John's began using the new slogan, Pizza Hut management perceived that it conveyed a message of superior quality ingredients. However, despite its desire to keep Papa John's from using it's newly adopted slogan, Pizza Hut management recognized that its only alternative at that time was to attempt to blunt the impact which the slogan would have on the pizza consuming public.

In an effort to neutralize the effect of the "Better Ingredients. Better Pizza." slogan, Pizza Hut, at the direction of its then president David Novak, undertook a broad and in-depth campaign to improve Pizza Hut's pizzas. Internal surveys of Pizza Hut's customers were conducted to determine consumer perceptions about Pizza Hut's products. When these surveys suggested that quality perceptions had eroded, Pizza Hut's research and development department undertook a massive effort to develop a higher quality pizza with a larger quantity of ingredients as well as improvements in the preparation of its pizza products at Pizza Hut's pizza outlets. The campaign was dubbed the "Lightning Bolt" project.

In early May 1997 Pizza Hut launched its new, improved pizza with a national sales campaign which included a television commercial in which Mr. Novak appeared, touting the improvements which had been made to Pizza Hut's pizzas.

Papa John's use of its "Better Ingredients. Better Pizza." slogan between its introduction and shortly before the launch of Pizza Hut's Lightning Bolt pizza remained essentially innocuous. Papa John's became aware of Pizza Hut's planned introduction of Pizza Hut's new and improved pizza prior to its inauguration, and developed the "Frank Carney" ads in an effort to blunt the effect of Pizza Hut's efforts.

However, even prior to Pizza Hut's launch of the "Lightning Bolt" project, Papa John's was being encouraged to draw specific comparisons to the ingredients used by Papa John's to those used by its competitors. In a memo to Mr. Schnatter dated September 5, 1995, from Stanislaus employees, it was noted that:

> Papa John's has a great positioning in the "Better Ingredients, Better Pizza" campaign! It is so strong we think it should be the unifying theme in *all* your ads. We liken your TV campaign to writing a book. "Better Ingredients, Better Pizza" is the book's title and unifying theme, while each spot is one chapter with a narrower focus that fits within the theme and reinforces it.

Plaintiff's Exh. 104 (emphasis in original). In responding to the Stanislaus comments on proposed commercials, Mr. Trout agreed in part, noting that: "The 'Better Ingredients' tagline should be crystal clear and the same at the end of each ad." *See* Plaintiff's Exh. No. 105.

In a later memo from Julie Ambrose, a Stanislaus employee, which Dino Cortopassi forwarded to Mr. Schnatter, Ms. Ambrose stated: "... I believe that print ads should always reinforce the 'Better Ingredients, Better Pizza' positioning and those *exact words* should be the most prominent in every ad." *See* Plaintiff's Exh. 110 (emphasis in original).

Subsequently, in October 1997—following the onset of Papa John's direct com-

parisons—Stanislaus critiqued later Papa John's ads. In this memo, Ms. Ambrose noted that:

> 1. The mission of Papa John's tv commercials should be to pound home your unique positioning—Better Ingredients, Better Pizza. That's the basis on which I'd evaluate every tv spot . . . . the mission never changes, i.e., Drive home "Better Ingredients, Better Pizza."

*See* Plaintiff's Exh. 130. In commenting on Ms. Ambrose's observations, Elliott Firestone, related:

> . . . let me say that when you have a great strategy—and, indeed we do—you don't have to "pound, pound, pound" away at it. Consumers "get it" even when you whisper it.

*See* Plaintiff's Exh. 132. In a second memo, responding to Ms. Ambrose's observations, Mr. Firestone commented on the effect of Papa John's post-May 1997 advertising, noting that: "The more reasons we can give the consumer to *believe* Papa John's uses better ingredients to make a better pizza, the better." *See* Plaintiff's Exh. No. 131 (emphasis in original). Later in the same memo, Mr. Firestone opined that showing Pizza Hut's pizza sauce in the pouches in which it was actually delivered would likely not have the same impact as advertising depicting tomato paste. *Id.* In a later memo dated March 18, 1998, Mr. Firestone reiterated that: "Showing that yucky looking paste is a very memorable graphic device—specifically when compared to our fine sauce . . . ." *See* Plaintiff's Exh. 149. That Papa John's took this advice to heart is evidenced by the advertising which it embarked upon, *e.g.*, with respect to the methods used to manufacture its tomato sauce as compared to those of its competitors, See Plaintiff's Exhs. 1–A–5, etc., discussed in Part 1, *supra.*[11] Although Papa John's did not identify Pizza Hut by name in all of its advertising relating to tomato sauce, references to "most big chains", e.g., Plaintiff's Exh. 1–A–5; "most pizza delivery chains", e.g., Plaintiff's Exhs. 1–A–8 and 1–A–16; and "most leading chains", e.g. Plaintiff's Exh. B–193—based upon the experience and sophistication of ordinarily prudent consumers of pizza products—would have been interpreted by such consumers to include Pizza Hut's products.

Similarly, Papa John's modification in the manufacturing of its pizza dough with filtered, ozonated water was motivated primarily by its intention to use this change as a basis for drawing a negative comparison to the dough preparation methods of Pizza Hut. *See* Plaintiff's Exh. 375 (invoices for purchase and installation of filtration equipment at Papa John's commissaries justifying the purchase: "To attain a marketing position and enhance 'Better Ingredients, Better Pizza.' "). Likewise, without any survey support Papa John's advertising inferred that unfrozen pizza dough resulted in a superior crust to that made from frozen dough.

All of Papa John's advertising relating to tomato sauce comparisons and dough comparisons prominently featured its "Better Ingredients. Better Pizza." slogan as an integral part of its advertising. The slogan appears in Papa John's print advertising. *See, e.g.*, Plaintiff's Exhs. 2–B–73, 2–B–87, 2–B–105, 2–B–188, 2–B–142, 2–B–153, and 2–B–193. Likewise, Papa John's slogan is repeated in its television advertising, with a graphic display of the slogan and/or in the announcer's voice-over. *See, e.g.*, Plaintiff's Exhs. 1–A–6, 1–A–11, 1–A–15, 1–A–16, 1–A–25, and, 1–A–29. The adverse effect on Pizza Hut's pizza products by Papa John's use of the "Better Ingredients. Better Pizza." slogan in Papa John's advertising after May 1997 is further buttressed by the "box survey"[12] conducted

---

**11.** A prior "sauce" comparison television commercial was withdrawn by Papa John's after a NAD panel determined that the absence of a can containing Papa John's tomato sauce implied that Papa John's sauce was made from fresh tomatoes at each store. The advertisement was subsequently replaced by a commercial which showed Papa John's sauce being poured from a can into a cooking container.

**12.** For the reasons stated in the record, the "box survey," (Plaintiff's Exh. No. 326) and related testimony were excluded from the

by D[2] Research under the supervision of Dr. Thomas DuPont.

The "box survey" consisted of mall surveys in which respondents, qualified as pizza users, were asked to respond to the "Better Ingredients. Better Pizza." slogan appearing on Papa John's boxes. The surveys were conducted in cities selected from the fifteen cities in which Papa John's had the highest concentration of advertising. A total of 94.7% of the respondents recalled having seen Papa John's advertising. *See* Plaintiff's Exh. No. 326 at p. 19. Of the respondents who recalled the slogan appearing on Papa John's box, 65% interpreted the slogan to mean a comparison between Papa John's pizza and those of its competitors, *id.* at p. 16, and from that group, 89.7% believed that the comparison being drawn was to Pizza Hut's products, *id.* at p. 17.

■ Papa John's argues that Pizza Hut's prayer for injunctive relief as it relates to its slogan should be barred by laches. While it is clear that Pizza Hut learned of Papa John's use of the "Better Ingredients. Better Pizza." slogan shortly after its adoption in May 1995, the fact remains that it was not utilized in advertising which violated the Lanham Act until after May 1997. Further, a finding of laches alone ordinarily will not bar granting injunctive relief. *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 152 (5th Cir.1985).

■ Papa John's also argues that the equitable doctrine of unclean hands should be applied to preclude Pizza Hut's request for injunctive relief. Papa John's correctly observes that the jury found that two of Pizza Hut's commercials also violated the Lanham Act. *See* Jury's Answers to Special Issues Nos. 11, 12, 15 and 16. If Pizza Hut were the only entity adversely affected by Papa John's unlawful activity, application of unclean hands might be appropriate. But whenever a seller disseminates false or misleading advertising to the con-

suming public, consumers' ability to exercise independent purchasing decisions based on truthful comparisons is compromised and distorted. The public interest will be served by enjoining advertising which violates the Lanham Act, regardless of which party's advertising is under consideration. *Accord ALPO Petfoods, Inc. v. Ralston Purina Co. (Alpo I)*, 720 F.Supp. 194, 212–214 (D.D.C. 1989), *aff'd in part, rev'd in part on other grounds*, 913 F.2d 958 (D.C.Cir.1990).

In post-trial correspondence, Papa John's counsel suggests that enjoining Papa John's use of its slogan is too Draconian a measure because its advertising which the jury found to violate the Lanham Act was disseminated only in limited markets. However, there is no evidence in the record which establishes exclusive, specific market areas in which Papa John's television commercials and print advertisements were received by potential pizza consumers.

Papa John's argues that no restraint should be placed on the use of its slogan in geographic areas where it currently has no operations. It is true that Papa John's does not currently market its pizzas in all fifty states. While this argument has some facial appeal, since prospective consumers of yet to-be-opened Papa John's stores are unlikely to have been exposed to Papa John's past unlawful advertising, such a qualification is impractical.

Any attempt to fashion an equitable remedy carving out specific geographic regions where Papa John's has no current operations would involve detailed qualifications of the relief granted which may well create unanticipated ambiguities in the injunction and make it more difficult to determine whether future conduct of Papa John's is violative of its terms. Also such qualifications would require Papa John's to develop two slogans—one with the "Better Ingredients. Better Pizza." slogan to be

jury's consideration, but were admitted, for the court's consideration only, with respect to Pizza Hut's request for injunctive relief.

used in future markets and a second slogan to be developed by Papa John's to be used in national advertising and in those geographic regions where Papa John's was operating when the offending advertising was broadcast or disseminated in print.

The evidence showed that Papa John's has had at least two prior slogans before it adopted the "Better Ingredients. Better Pizza." slogan, *i.e.*, from 1984 to May 1995. Given the sums of money which Papa John's spends with advertising agencies, it is impossible to accept any suggestion that a new slogan cannot be developed. Despite the additional time and expense which Papa John's will incur in such endeavors, its obligation to do so is a consequence of its own conduct.

Although Papa John's started in May 1995 with a slogan which was essentially ambiguous and self-laudatory, consistent with the legal definition of non-actionable puffery, Papa John's deliberately and intentionally exploited its slogan as a centerpiece of its subsequent advertising campaign after May 1997 which falsely portrayed Papa John's tomato sauce and pizza dough as being superior to the sauce and dough components used in Pizza Hut's pizza products. When the "Better Ingredients. Better Pizza." slogan is considered in light of the entirety of Papa John's post-May 1997 advertising which violated the provisions of the Lanham Act and in the context in which it was juxtaposed with the false and misleading statements contained in Papa John's print and broadcast media advertising, the slogan itself became tainted to the extent that its continued use should be enjoined.

### 6. *Papa John's Motion for Judgment as a Matter of Law*

At the close of Pizza Hut's case-in-chief, Papa John's moved for judgment as a matter of law pursuant to Rule 50(a)(1) which the court denied. Subsequently, Papa John's moved for judgment as a matter of law after both parties had rested and prior to submission to the jury on the liability phase of the trial. The court declined to grant the motion and submitted the liability issues to the jury. Accordingly, the court now considers Papa John's Amended Motion and Brief for Judgment as a Matter of Law filed on November 16, 1999, pursuant to Rule 50(b)(1)(C).

In determining the merits of a Rule 50 motion, the court applies the standards set out in *Boeing v. Shipman*, 411 F.2d 365, 374–375 (5th Cir.1969) (*en banc*):

> [The] court should consider all of the evidence—not just the evidence which supports the non-mover's—but in light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [jurors] could not arrive at a contrary verdict, granting [a motion for judgment as a matter of law] is proper. On the other hand, if there is substantial evidence opposed to the [motion], that is evidence of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions, the [motion] should be denied.... [I]t is the function of the jury as traditional finders of facts, and not the court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

Papa John's argues that its slogan "Better Ingredients. Better Pizza." constitutes puffery as a matter of law and therefore requires that the jury's verdict on Special Issues 1 and 2 be set aside. For the reasons set out in Part 5, *supra,* Papa John's deliberate choice to use the slogan in its advertising violated the Lanham Act, and was part and parcel of its false and misleading advertising campaign.

Papa John's also contends that the jury's verdict cannot stand because Pizza Hut failed to present consumer survey evidence. The record reflects that the only evidence of consumer surveys consisted of the three studies conducted by Dr. DuPont, see Plaintiff's Exhs. 326, 327, and 328, and the testimony related to the sur-

vey results.[13] These studies tested the effect of two of Papa John's taste test television commercials and the Papa John's pizza delivery box.

When a merchandising statement is literally false, there is no need to consider the advertisement's impact on consumers. *Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317 (2d Cir. 1982); *Johnson & Johnson–Merck v. Rhone–Poulenc Rorer,* 19 F.3d 125, 129 (3d Cir.1994). Viewed in the light most favorable to the verdict, in the face of the uncontroverted evidence that Pizza Hut does not mix canned tomato paste on the premises of its stores to prepare its tomato sauce and the absence of any evidence that other pizza chains' stores prepare tomato sauce directly from canned tomato paste, the jury could reasonably have found that Papa John's tomato sauce comparisons were literally false. *See, e.g.,* Plaintiff's Exhs. 1–A–5, 1–A–11, 1–A–15, 1–A–16 [14], 2–B–73, 2–B–105, 2–B–153, and 2–B–193. Such advertising closely parallels that described in *Coca–Cola,* 690 F.2d at 318.

Neither a court considering a prayer for injunctive relief, nor a jury empaneled to hear a Lanham Act case, is permitted to substitute personal opinions for that of the consumers to whom the advertising was addressed. Rather, "... the question in such cases is—what does the person to whom the advertisement is addressed find the message to be?" *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 166 (2d Cir.1978). In the present case, the court's charge instructed the jury that witnesses' personal opinions as to the effect which advertising had on the average consumer should be disregarded and that they should decide issues based upon the interpretation which an ordinarily prudent consumer would give. *See* Court's Instructions to the Jury at p. 2,

¶ 5; *see also id.,* p. 4 at ¶ 6 and the elements enumerated on pp. 4–5.

In a number of opinions from other circuits, cited by Papa John's in its motion and brief, courts have stated that consumer surveys are necessary. *See, e.g., United Industries Corp. v. Clorox Co.,* 140 F.3d 1175, 1183 (8th Cir.1998) and collected cases. However, in *United Industries,* the court observed that the success of an action, based on statements which are not literally false *"usually* turns on the persuasiveness of a consumer survey." *Id.* at 1183 (emphasis added). Despite the frequent pronouncements of sister circuit courts, the court has found no cases holding as a matter of law that a consumer survey is a *sine qua non* for establishing liability under the Lanham Act where the advertising at issue is not literally false. Further, the Fifth Circuit has not addressed this issue.

Under some circumstances a consumer survey may be necessary where the consumers to whom the advertising was addressed have specialized training beyond the knowledge and expertise of lay persons. *See William H. Morris Co. v. Group W, Inc.,* 66 F.3d 255 (9th Cir.1995) (target audience consisting of retail pharmacists). However, it is clear that the targeted audience of Papa John's advertising, *i.e.,* potential purchasers of chain pizza products, do not constitute a group which has some higher level of expertise or knowledge than that possessed by the consuming public in general. Similarly, given the nature of the advertising at issue, there is no reason to believe that it conveyed esoteric messages which would not be understood by the consumer population at large.

American jurisprudence is replete with numerous circumstances in which the con-

---

**13.** The court excluded from the jury's consideration the testimony of Dr. DuPont with reference to the "box" surveys (Plaintiff's Exh. 326) on *Daubert* grounds, but admitted it with respect to Pizza Hut's prayer for injunctive relief.

**14.** The same could be said for Plaintiff's Exh. 1–A–29, although it was admitted only to show, if it did, a continuing pattern in Papa John's advertising campaign.

duct at issue is determined in light of a hypothetical reasonable person standard, *e.g.*, negligence determinations viewed from the vantage point of a *reasonably* prudent person under the same or similar circumstances; hostile work environments in Title VII cases measured by whether a *reasonable* person would find such environments hostile; obscenity determinations viewed by the *average* person applying contemporary community standards. In those situations and even where expert testimony may be admissible to inform the fact finder's determinations, such is not required by law.

Under the circumstances of this case, the evidence presented to the jury and the instructions given to the jury, Pizza Hut was not required to prove its claims with consumer surveys, and Papa John's Rule 50 motion on this basis will be denied.[15]

### 7. *Damages*

Both sides seek monetary damages for costs associated with "corrective advertising" run in response to the other's allegedly false or misleading advertising. *See* Pizza Hut's amended complaint filed on March 17, 1999, at p. 28, ¶ 13; Papa John's counterclaim filed on February 12, 1999, at p. 18, ¶ 66; *see also* Amended Joint Pre-Trial Order filed on October 25, 1999, I.A.8 at p. 4 and I.B.25 at p. 13.

Following the jury's verdict on the liability phase of the trial, the parties waived the jury's determination on damages and agreed to have the damages issues decided by the court. Accordingly, in this portion of the court's order, the court files its opinion with respect to the parties' respective claims for monetary damages. See R. 52(a).

The costs incurred by a party in responding to a competitor's false or misleading advertising claims are recoverable in a Lanham Act suit. *ALPO Petfoods, Inc. v. Ralston Purina Co., (Alpo I)*, 913 F.2d at 969; *U–Haul Int'l. Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986). The advertising costs which are recoverable are the costs of "any completed advertising that actually and reasonably responds to the offending ads." *ALPO Petfoods*, 913 F.2d at 969, *citing Cuisinarts, Inc. v. Robot–Coupe Int'l. Corp.*, 580 F.Supp. 634, 641 (S.D.N.Y.1984); *see also, ALPO Petfoods, Inc. v. Ralston Purina (Alpo II)*, 997 F.2d 949, 952 (D.C.Cir. 1993).

### a. *Pizza Hut's Corrective Advertising Damages*

Pizza Hut seeks damages for costs related to four television commercials[16] and six print advertisements. *See* Declaration of Christopher Kuehn, Director of Field Marketing for Pizza Hut, executed on Dec. 3, 1999, and filed on Dec. 6, 1999.

The alleged corrective television commercials for which Pizza Hut seeks to recover damages are (1) "Compare–Orlando" (Kuehn Decl.Exh. 1); (2) "New Can All" (Kuehn Decl.Exh. 2); (3) "Less" (Defendant's Memorandum Concerning Damages, Attachment C—Defendant's Exh. 30A); and "Two Quotes" (Kuehn Decl.Exh. 3).

"Compare–Orlando" makes express comparisons between Pizza Hut pizzas and those of Papa John's. It claims that Pizza Hut's pizzas have 40% more toppings, that Pizza Hut uses fresh mushrooms as compared to Papa John's canned mushrooms and that Pizza Hut's Pan Pizza

---

**15.** Although Papa John's amended Rule 50 motion was filed prior to the return of the jury's verdict, were its argument with respect to the absence of consumer surveys adopted by the court, it would require that the jury's verdict on Papa John's counterclaims—See Special Issues Nos. 11, 12, 15 and 16—be set aside as well, since Papa John's presented no consumer surveys in support of its counterclaims.

**16.** Pizza Hut initially sought to recover for six television commercials, but has withdrawn its request for damages relating to two of the commercials, Defendant's Exhibits 20 and 1123, in light of the jury's determination that both violated the Lanham Act. *See* Jury's Answers to Special Issues Nos. 11, 12, 15, and 16. .(Kuehn Decl. pp. 4–5, ¶ 6.)

beat Papa John's Original Crust Pizza in regional taste tests. "Compare–Orlando" is the same commercial which was admitted in the liability phase of trial as Defendant's Exhibit 21A and identified as "Compare II." *See* Court's Instructions to the Jury at p. 13, Special Issues Nos. 13 and 14.

The court in *ALPO II*, 997 F.2d at 952, authorized recovery for corrective advertising expenses when "at the margin, the victim would not have undertaken the campaign *but for* the false ads." (Emphasis added).

The "taste test" segment of "Compare–Orlando" responds to the "taste test" segment of Papa John's commercials, proclaiming that Papa John's "won, won big time" when compared to Pizza Hut's pizza. *See, e.g.,* Plaintiff's Exhs. 1–A–11 and 1–A–15. The jury found that Papa John's "taste test" commercials to be false or misleading. *See* Jury's Answer to Special Issue No. 3. Accordingly, the Court finds that Pizza Hut is entitled to recover its costs for "Compare–Orlando" ("Compare II").

■ The television commercials "New Can All" and "Less" are quite similar in the messages they convey. Both contain a voice-over relating that Papa John's wants you to think that its tomato sauce is fresh, but it is canned sauce, and both advertisements visually depict a Papa John's tomato sauce can. The remainder of each commercial makes comparisons between the two competitors' products. Although the jury found Papa John's "sauce" claims were false or misleading, see Jury's Answers to Special Issues Nos. 5 and 6, the vice of these advertisements is the fact that they represented that Pizza Hut's tomato sauce was made directly from tomato paste and further, without any support, Papa John's "sauce" advertisements asserted that the "fresh-pack" processing method used to make Papa John's tomato sauce produced a superior tomato sauce to Pizza Hut's tomato sauce concentrate.

However, Papa John's commercials, see, e.g., Plaintiff's Exhs. 1–A–9, 1–A–15, 1–A–25, and 1–A–29, either have a voice-over stating that Papa John's sauce is canned fresh or visually depict a can containing Papa John's sauce.[17]

Succinctly stated, although "New Can All" and "Less" emphasize the fact that Papa John's tomato sauce is canned, the Pizza Hut commercials *do not correct* a false impression suggesting otherwise in the Papa John's commercials to which Pizza Hut's advertising responded. Therefore, Pizza Hut is not entitled to recover damages for these commercials.

■ Pizza Hut's final television commercial for which it seeks recovery, "Two Quotes" (Kuehn Decl.Exh. 3) was not offered in the liability phase. This commercial was run in response to a Papa John's advertisement (Plaintiff's Exh. No. 1–A–18) which in turn responded to Pizza Hut's commercial (Defendant's Exh. No. 1123—"Freshness") which the jury found violated the Lanham Act. *See* Jury's Answers to Special Issues Nos. 15 and 16. The dominant theme of "Two Quotes" remains the same as "Freshness", i.e., Papa John's uses trucked-in dough which is stale ("up to six days old before they use it"). The intervening commercial of Papa John's does not transform Pizza Hut's message to consumers into one which does not violate the Lanham Act. A party is not entitled to recover for advertising which itself is false and misleading. *See ALPO Petfoods, Inc. v. Ralston Purina Co. (Alpo II)*, 778 F.Supp. 555, 562 (D.D.C.1991), *aff'd in part, rev'd in part on other grounds*, 997 F.2d 949, 953 (D.C.Cir.1993).

The "stale dough" theme appears in two of Pizza Hut's print advertisements[18], i.e. a "bubble" statement on the lower corner "Dough made fresh daily—not pre-made dough balls 4 to 6 days old before they're used like Papa John's." (Kuehn Decl.Exh.

---

**17.** The absence of a sauce can in Papa John's prior commercials was corrected in response to a NAD determination. *See* n. 11, *supra*.

**18.** None of the print ads were previously offered at trial.

4.) For the reasons stated above, Pizza Hut is not entitled to recover its costs for print advertising which includes the "bubble" statement.

■ The remaining print ads prominently mention Papa John's by name and contain comparisons, to wit (1) "More great pizza choices than Papa John's" and (2) "40% more toppings than Papa John's." (Kuehn Decl.Exh. 4.)

Mike Rawlings, Pizza Hut's current president, testified in the liability phase that Pizza Hut does not ordinarily engage in comparative advertising and that Pizza Hut embarked on such an advertising track only after Papa John's commercials began airing in May 1997. However, Papa John's presented evidence clearly showing that Pizza Hut has used comparative advertising against competitors by name in the past. *See, e.g.,* Defendant's Exhs. 2477, 2479, 2480.[19] Therefore, the Court does not give much weight or credence to Pizza Hut's contention that Papa John's advertising compelled it to respond with comparative advertising.

Perhaps more to the point is the character of the comparative print advertisements. Clearly, the primary thrust of them is to tout two undisputed facts—that Pizza Hut has a larger choice of pizzas than Papa John's and that it uses 40% more toppings. In determining whether these advertisements were reasonable responses, care must be given to limit recovery only to the damages sustained. Any award of damages for advertising which is not reasonably responsive is contrary to the concept of "corrective advertising" and would result in requiring a defendant to subsidize its competitors' advertising budget. Accordingly, Pizza Hut is not entitled to recover damages for these print advertisements.

For the foregoing reasons, the Court finds that Pizza Hut is entitled to recover corrective advertising costs only for those costs associated with the "Compare–Orlando" television commercial.

■ In his declaration in support of Pizza Hut's claim for damages, Mr. Kuehn states that the total cost of producing all six corrective television commercials for which Pizza Hut seeks damages was $775,978.51. (Kuehn Decl. p. 3 n. 1.) However, the invoices presented in support of the production costs (Kuehn Decl. Exh. 5) do not itemize the charges on a commercial by commercial basis. Under such circumstances, the total production costs should be prorated for each of the six commercials at $129,329.75 per commercial. Since relief is being granted for only one commercial, "Compare–Orlando," Pizza Hut is entitled to recover $129,329.75 in production costs, representing the prorated cost for a single commercial.

Pizza Hut also seeks recovery of additional expenditures on "Base TV Spot Media Spending." Based upon the evidence presented, the court understands that this category of expenditure is that amount paid by Pizza Hut to television outlets to run a package of Pizza Hut commercial advertisements. As in the case of Pizza Hut's evidence in support of production costs, Pizza Hut has not itemized the additional sums attributed to "Base TV Spot Media Spending" on a per commercial basis. (Kuehn Decl. Exh. 6.) However, such a break-down is provided in Beth Hodge's letter to Mr. Kuehn, dated October 1, 1999, attached as Exh. N to Papa John's Memorandum on Damages.[20] Ms. Hodge's letter reflects base buy spending for Pizza Hut's "Compare–Orlando" commercial in the amount of $120,000.

The final category of expenditure for which Pizza Hut seeks recovery is for "Incremental TV Spot Media Spending" which represents the additional costs for running

---

**19.** In addition, Pizza Hut's commercial and its new box design (Defendant's Exh.2075) used to introduce its Lightning Bolt pizza in May 1997, overtly invites pizza users to compare it to competitors' pizzas.

**20.** Ms. Hodge is employed by TLPartnership which purchases television air time for Pizza Hut's commercials.

Pizza Hut's corrective commercials in excess of those costs incurred in the "Base TV Spot Media Spending" category. In the absence of further explanation in Mr. Kuehn's declaration and in the exhibit attached to it (Kuehn Decl. Exh. No. 7), the court again looks to Ms. Hodge's letter which reflects incremental spending attributed to "Compare–Orlando" in the amount of $218,290.

Accordingly, Pizza Hut is entitled to recover damages in the amount of $467,-619.75, constituting the production costs and advertising expenses incurred for its corrective commercial "Compare–Orlando."

■■ Pizza Hut also seeks treble damages for its corrective advertising expenditures. *See* 15 U.S.C. § 1117(a). Unlike a case in which a party is found to be entitled to lost profits or in a case in which damages are awarded for prospective "corrective" advertising, Pizza Hut's sole damages claim is for costs for "corrective advertising" which has already been produced and broadcast, thereby removing any possibility that the actual damages sustained cannot be precisely calculated. Although it may be argued that the damages awarded understate Pizza Hut's actual damages, any claimed understatement is more a function of the manner in which Pizza Hut has marshalled its evidence rather than a practicable impossibility to prove damages with specificity. Further, § 1117(a) expressly requires that the damages awarded be subject to the principles of equity and the sum awarded "constitute compensation and not a penalty." Given the fact that all of the costs and expenditures for which Pizza Hut seeks recovery have already been incurred, to award it an amount in excess of that which has been proven would violate the express prohibition against imposing a penalty. Therefore, Pizza Hut's prayer for any damages award over and above those awarded above will be denied.

### b. *Papa John's Corrective Advertising Damages*

Papa John's seeks to recover its costs associated with two television commercials which it alleges were run to correct Pizza Hut's misleading advertisements.

Papa John's seeks to recover for its "Dough" commercial (Plaintiff's Exh. 1–A–18). This ad was produced and distributed following Pizza Hut's airing of its commercial "Freshness" (Defendant's Exh. 1123).

Papa John's "Dough" commercial begins with the statement that "some things don't taste their best the day they're made," and notes that "you'd never drink wine the day they've crushed the grapes." Ordinarily prudent consumers over the legal drinking age would be well aware of this fact. The commercial then notes that a person would not eat a green banana. All ordinarily prudent pizza consumers would understand the truth of this statement, that is that one does not eat unripe fruits or vegetables. Both statements recognize that maturity or aging is a necessary feature of the taste qualities of these types of consumption items.

The commercial then shifts to pizza dough, implying that aging is a necessary step in producing dough. The comparison of wine and fruit on the one hand to dough on the other is a *non-sequitur*. The evidence in the case from the "dough experts" clearly establishes that proofing is a necessary step in the preparation of pizza dough. However, as described above in Part 2 Dough Advertisements, the proofing of dough while the yeast remains active is much more dependent on temperature than time. As the evidence shows, the yeast activity in the cold or slow-fermentation process used by Papa John's is retarded by refrigeration. Papa John's advertising is misleading in failing to mention this fact and in implying that superior dough requires several days for proofing. If the intended message was not yet conveyed to the consuming audience, the advertisement expressly observes that "[Papa John's] never use[s] dough made

the same day, like some folks," and ends with a voice-over and visual depiction of the slogan "Better Ingredients. Better Pizza." Papa John's is not entitled to recover for "corrective" advertising, which itself is misleading. *See ALPO II,* 778 F.Supp. at 562.

Papa John's also seeks damages related to its "Tomato Fields" commercial run in response to Pizza Hut's "Freshness" commercial (Defendant's Exh. 1123). "Freshness" includes a reference to the fact that Papa John's tomato sauce is canned and processed. It also includes a specific reference to Papa John's dough being trucked in and up to six days old. The reference to Papa John's dough is common to Pizza Hut's other commercials (Defendant's Exh. 20) which the jury also found violated the Lanham Act.

It is clear that the "dough" reference in Pizza Hut's offending commercial was the basis for the jury's determination. The factual statements in Defendant's Exh. 1123 concerning Papa John's tomato sauce being processed, cooked and canned are true and undisputed in the evidence, and standing alone would not support a finding that Defendant's Exh. 1123 violated the Act. While it is true that "Tomato Fields" responded to Pizza Hut's advertisement which described Papa John's tomato sauce, since "Tomato Fields" was not in response to a false or misleading message in Pizza Hut's commercial, it is not a corrective advertisement for which damages may be awarded.[21]

### 8. *Attorneys' Fees*

In "exceptional" cases brought under the Lanham Act, courts are authorized to award attorney's fees to a prevailing party. *E.g., Texas Pig Stands v. Hard Rock Cafe Int'l. Inc.,* 951 F.2d 684, 697 (5th Cir.1992).

This case is not "exceptional" as that term is understood in ordinary usage.

The advent of comparative advertising where a seller specifically compares the attributes of its products or services to those of a competitor, either expressly or by implication, has resulted in a plethora of Lanham Act cases and large numbers of judicial decisions.

However, "exceptional" has been given a specific term of art definition in the legislative intent and judicial construction. *Id.* at 696–697; *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1390 (5th Cir.1996) (describing an "exceptional case" as "one where the violative acts can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or willful' ").

The advertising which violated the Lanham Act in this case-both that of Papa John's and Pizza Hut—does not establish by clear and convincing evidence that any of the above criteria is satisfied. Rather, the evidence shows that each side in the course of its advertising in the highly competitive chain pizza market overstepped the permissible bounds of comparative advertising, not with a malicious intent to destroy the business of its competitor, but to enhance and promote its own share of the market. The conduct at issue falls far short of the culpable, malicious character necessary to find that the present action is an "exceptional" case within the meaning of 15 U.S.C. § 1117. Accordingly, each side will bear its own attorney's fees.

IT IS SO ORDERED.

### FINAL JUDGMENT

Pursuant to the consents of the parties and the District Court's order of transfer filed on October 22, 1998, in accordance with the provisions of 28 U.S.C. § 636(c), the jury's verdict on liability filed on November 18, 1999, and the court's memorandum opinion filed this day,

---

**21.** Because the Court finds that Papa John's is not entitled to damages based upon "corrective" advertising costs, it is unnecessary to consider Pizza Hut's argument that Papa John's damages should be limited to not more than $800,000. *See* Pizza Hut's Post–Trial Brief on Damages, filed on Dec. 6, 1999, at II. A., pp. 12–13.

**IT IS ORDERED, ADJUDGED AND DECREED** that Papa John's International, Inc. and Papa John's U.S.A., Inc. (hereinafter referred to as "Papa John's"), their officers, agents and employees [1] are permanently enjoined from using the slogan "Better Ingredients. Better Pizza." in association with the sale, promotion and/or identification of pizza products sold under the Papa John's name. It is further ordered that Papa John's is enjoined from using any slogan in the future which constitutes a recognizable variation of the phrase "Better Ingredients. Better Pizza." or which uses the adjective "better" to modify the terms "ingredients" and/or "pizza."

In carrying out and complying with the "cease and desist" order set out in the preceding paragraph:

1. Papa John's will immediately cease soliciting, purchasing and/or creating any print or broadcast advertising which either visually or audibly depicts the slogan "Better Ingredients. Better Pizza." or any proscribed variation thereof.

2. As soon as is practicable, but in no event later than January 24, 2000, Papa John's will cease using any current print or broadcast advertising—owned by or paid for in whole or in part by Papa John's—which contains either visually or audibly the slogan "Better Ingredients. Better Pizza." or any proscribed variation thereof in the sale, promotion, and/or identification of Papa John's pizza products. In the event that Papa John's has the contractual right to control the contents of advertising paid for in whole or in part by its franchisees, Papa John's will exercise this right to require its franchisees to cease using advertising which contains the "Better Ingredients. Better Pizza." slogan and to require that its franchisees return all copies of any such televi-

sion and radio commercials and/or any print advertising layouts to Papa John's or to destroy the same. In the event that Papa John's has no contractual rights over the advertising disseminated by its franchisees, Papa John's will use all good faith efforts to dissuade its franchisees from the continued use of advertising containing the "Better Ingredients. Better Pizza." slogan or any proscribed variation thereof.

3. Papa John's will immediately modify any contracts with third-party vendors which provide pizza boxes, condiment containers, wearing apparel and/or aprons imprinted with the "Better Ingredients. Better Pizza." slogan to delete the said slogan and/or any proscribed variation thereof from any future items manufactured and/or imprinted by the third-party vendors.

   Papa John's will not enter into any subsequent third-party vendor agreements for the production of such items imprinted with the "Better Ingredients. Better Pizza." slogan or any proscribed variation thereof, nor will it permit its franchisees to do so in the event that Papa John's has the legal right to prohibit its franchisees from doing so.

   Papa John's will be permitted to use any such imprinted items—which were purchased prior to the date of this judgment and which are currently in Papa John's inventory or in the inventories of its franchisees—until exhausted or no longer worn or used on premises where Papa John's pizza products are sold, or until March 3, 2000, whichever occurs first.

4. Papa John's will immediately cease placing the "Better Ingredients. Better Pizza." slogan or any proscribed variation thereof on any signage displayed at any corporate

---

**1.** All subsequent references to Papa John's in this judgment relating to injunctive relief includes Papa John's officers, agents and employees.

or franchisee locations where Papa John's pizza products are sold and will cease placing such slogan or any proscribed variation thereof on any vehicle or transport trailer owned by or leased to Papa John's or any vehicle used by an employee of Papa John's or by an employee of a franchisee to deliver Papa John's pizza products.

As to any presently existing signage and as to any signage which has been manufactured in whole or in part prior to the date of this judgment, the same will be removed, deleted or painted over on or before April 3, 2000. In the event that Papa John's does not have the legal right to require a franchisee to remove the slogan from the franchisee's presently existing signage, Papa John's will use all good faith efforts to dissuade the franchisee from continued use of the slogan on the franchisee's signage.

It is further **ORDERED** that as soon as practicable, but in no even later than January 24, 2000, Papa John's will cease disseminating any print, radio or television commercials which identify Frank Carney as a co-founder of Pizza Hut *unless* such advertising includes a voice-over, printed statement or a superimposed message ("super")[2] which states that Frank Carney has not been affiliated with Pizza Hut since 1980 and deletes any depiction of the "Better Ingredients. Better Pizza." slogan.

It is further **ORDERED** that Papa John's is permanently enjoined from broadcasting or disseminating any television, radio or print advertisements, produced and/or disseminated prior to the date of this judgment, which compare any component of Papa John's pizzas to a like component of Pizza Hut's pizzas *and* which explicitly or implicitly state or suggest that Papa John's component is superior to the

same component of Pizza Hut's pizzas. *See, e.g.,* tomato sauce, dough and dough preparation comparisons.

It is further **ORDERED** that as soon as practicable, but in no event later than January 24, 2000, Papa John's will cease disseminating any print, radio or television advertising, produced or disseminated prior to the date of this judgment, which claims that Papa John's "won, won big time" in consumer taste test comparisons to Pizza Hut's pizza products. *See, e.g.,* Plaintiff's Exh. 1–A–11.

It is further *ORDERED* that in the event Papa John's has the contractual right to control the contents of advertising paid for in whole or in part by its franchisees, Papa John's will exercise this right to require its franchisees to cease using non-complying "Frank Carney" advertisements, component comparison advertising disseminated prior to the date of this judgment, and/or "won, won big time" taste test advertising, as described above, and to further require its franchisees to return to Papa John's all copies of any such television and radio commercials and/or print advertising layouts for such advertising or to destroy the same. If Papa John's does not have a right of control over the contents of its franchisees' advertising, Papa John's will use all good faith efforts to dissuade its franchisees from the continued use of such advertising.

It is further **ORDERED** that Papa John's will not produce or cause to be produced any print or broadcast advertising after the date of this judgment—paid for in whole or in part by Papa John's—which explicitly or implicitly claims that a component of Papa John's pizzas is superior to the same component of Pizza Hut's pizzas *unless* the superiority claim is supported by either (1) scientifically demonstrated attributes of superiority or (2)

---

**2.** As used in this judgment, the term "super" means a printed statement at the bottom of a television commercial, appearing on the screen for at least five seconds or for one-third of the commercial's length—whichever

is less—and which satisfies the size and prominence standards of the advertising departments of the ABC, CBS and NBC television networks.

taste test surveys, conducted under recognized standards for consumer surveys, which demonstrate a statistically significant preference for the Papa John's component addressed in the advertising to the same component of Pizza Hut's pizzas. In the event that the claim is supported by taste test surveys, the advertising shall include a printed statement, voice-over or "super,"[3] whichever is appropriate, stating the localities where the tests were conducted (in the event regional tests are used), the inclusive dates on which the surveys were performed, and the specific pizza products which were tested.

It is further **ORDERED** that in the event Papa John's engages in future comparative advertising as permitted in the preceding paragraph and in which the television or print advertisement purports to depict a comparable Pizza Hut component, the advertising will show the genuine comparable Pizza Hut component, photographed in the same lighting conditions as used to photograph Papa John's comparable component.

It is further **ORDERED** that Pizza Hut Inc., its officers, agents and employees[4] are permanently enjoined from broadcasting or disseminating any television, radio or print advertisements, produced and/or disseminated prior to the date of this judgment, which compare any component of Pizza Hut's pizzas to a like component of Papa John's pizzas *and* which explicitly or implicitly state or suggest that a Pizza Hut component is superior to the same component of Papa John's pizzas. *See, e.g.,* Defendant's Exh. 20 ("Compare I":); Defendant's Exh. 1123 ("Freshness"); Kuehn Decl. Exh. 3 ("Two Quotes"); Kuehn Decl. Exh. 4 (print advertising with the "bubble statement": "Dough made fresh daily—not pre-made dough balls 4 to 6 days old before they're used like Papa John's").

It is further **ORDERED** in the event Pizza Hut has the contractual right to control the contents of advertising, paid for in whole or in part by its franchisees, that Pizza Hut will exercise this right to require its franchisees to cease using any advertising described in the preceding paragraph of this judgment and to further require its franchisees to return to Pizza Hut all copies of any such television and radio commercials and/or print advertising layouts for such advertising or to destroy the same. If Pizza Hut does not have a right of control over the contents of its franchisees' advertising, Pizza Hut will use all good faith efforts to dissuade its franchisees from the continued use of such advertising.

It is further **ORDERED** that Pizza Hut will not produce or cause to be produced any print or broadcast advertising after the date of this judgment—paid for in whole or in part by Pizza Hut—which explicitly or implicitly claims that a component of Pizza Hut's pizzas is superior to the same component of Papa John's pizzas *unless* the superiority claim is supported by either (1) scientifically demonstrated attributes of superiority or (2) taste test surveys, conducted under recognized standards for consumer surveys, which demonstrate a statistically significant preference for the Pizza Hut's component addressed in the advertising to the same component of Papa John's pizzas. In the event that the claim is supported by taste test surveys, the advertising shall include a printed statement, voice-over or "super"[5], whichever is appropriate, stating the localities where the tests were conducted (in the event regional tests are used), the inclusive dates on which the surveys were performed, and the specific pizza products that were tested.

It is further **ORDERED** that in the event Pizza Hut engages in future comparative advertising as permitted in the preceding paragraph and in which the television or print advertisement purports to

---

**3.** *See* n. 2, *supra.*

**4.** All subsequent references to Pizza Hut in this judgment relating to injunctive relief includes Pizza Hut's officers, agents and employees.

**5.** *See* n. 2, *supra.*

depict a comparable Papa John's component, the advertising will show the genuine comparable Papa John's component, photographed in the same lighting conditions as used to photograph Pizza Hut's comparable component.

It is further **ORDERED, ADJUDGED AND DECREED** that Pizza Hut recover damages from Papa John's in the amount of $467,619.75, bearing interest at the rate of 5.670% per annum until satisfied.

It is further **ORDERED** that all attorneys' fees and costs will be borne by the party which incurred the same.

It is further **ORDERED** that all relief not granted in this judgment is **DENIED** with prejudice.